**John C. SZYKA, Appellant,**

v.

**UNITED STATES SECRETARY OF DEFENSE, Appellee.**

**No. 123, Docket 75–6003.**

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1975.

Decided Nov. 5, 1975.

---

John C. Szyka, pro se.

Henry S. Cohn, Asst. U. S. Atty. (Peter C. Dorsey, U. S. Atty., for the District of Connecticut, on the brief), for appellee.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

PER CURIAM:

Appellant, a Marine combat veteran, filed a pro se complaint[1] on September 10, 1974, against the United States Secretary of Defense, seeking $6.8 million damages for an incident taking place on the night of September 18, 1971, almost three years before his suit was filed. The incident allegedly involved a shelling close to plaintiff and his family in their boat in Long Island Sound from some military installation "in furtherance of a conspiracy on the part of unnamed government officials to threaten and intimidate him." The United States District Court for the District of Connecticut, Robert C. Zampano, *Judge,* dismissed the complaint on the basis that it was brought after expiration of the two-year statute of limitations in 46 U.S.C. § 745 whether as a suit under the Public Vessels Act, 46 U.S.C. § 781, or as a suit under the Suits in Admiralty Act, 46 U.S.C. §§ 741–52. Alternatively the district court noted that under the Federal Tort Claims Act, 28 U.S.C. § 1346, the

---

1. Appellant's complaint alleged violation of his constitutional rights, and he subsequently moved for the convocation of a three-judge court to determine the constitutionality of the Federal Tort Claims Act statute of limitations, 28 U.S.C. § 2401(b). Judge Zampano dismissed the complaint without convening a three-judge court, and we affirm his implicit rejection of appellant's motion as well as his dismissal of the complaint.

statute of limitations had also run, 28 U.S.C. § 2401(b), and the plaintiff had omitted to exhaust his administrative remedies, 28 U.S.C. § 2675.

We agree with Judge Zampano that if the alleged shelling were from a United States ship there would be no question but that this was a case within the admiralty jurisdiction and doubtless against the United States under 46 U.S.C. § 781 governed in turn by the two-year limitation of 46 U.S.C. § 745. *See Johansen v. United States,* 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952). On the other hand, the case for admiralty jurisdiction in the event that the alleged shelling originated from a military installation on land is less clear. Whether such a tort would properly lie under the Suits in Admiralty Act, 46 U.S.C. §§ 741–52, however, or whether it would be actionable instead under the Federal Tort Claims Act, 28 U.S.C. § 1346, we must affirm because appellant's suit was not timely filed.

While *The Plymouth,* 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1866), has been broadly cited for the proposition that "every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance," admiralty jurisdiction was in fact less broadly construed in the case itself. Where the cause of the damage originated on water but the damage itself was caused to buildings situated on land, jurisdiction was held not to lie.[2] The *Plymouth* court found the "true meaning of the rule of locality in cases of marine torts" to require that the whole "substance and consummation" of the wrong and injury have been committed on the high seas or navigable waters. *Id.,* at 35. As the Supreme Court recently noted, however, it "has never explicitly held that a maritime locality is the sole test of admiralty tort jurisdiction," *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 260, 93 S.Ct. 493, 499, 34 L.Ed.2d 454 (1972); one therefore cannot automatically conclude that a tort the cause of which arises on land but the damage from which occurs on the sea is necessarily within the admiralty jurisdiction.

The most recent Supreme Court case on the subject, *Executive Jet, supra,* eliminates the "locality-alone" test at least in aviation torts, and makes the existence of admiralty jurisdiction turn on whether there is a significant relationship to traditional maritime activity regardless of where the negligence occurs or where the damage occurs. *Id.* at 249, 93 S.Ct. 493. Under that test, shelling from shore allegedly injuring passengers in a pleasure boat would rather plainly bear a significant relationship to traditional maritime activity. There are cases, moreover, from other federal courts holding that such a suit would be of a maritime nature, and properly a proceeding in admiralty. *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974);[3] *T. J. Falgout Boats, Inc. v. United States,* 361 F.Supp. 838 (C.D.Cal. 1972), *aff'd,* 508 F.2d 855 (9th Cir. 1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975) (claimant's vessel struck by Sidewinder missile from Navy airplane); *Fireman's Fund Insurance Co. v. City of Monterey,* 6 F.2d 893 (N.D.Cal. 1925). While the Suits in Admiralty Act, 46 U.S.C. §§ 741–52, originally spoke only to the bringing of libels in personam against the United States, it now covers all maritime claims against

---

**2.** The narrow holding of *The Plymouth,* 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1866), was "overruled" by Congress in the Extension of Admiralty Jurisdiction Act, 62 Stat. 496, 46 U.S.C. § 740, as enacted in 1948.

**3.** Appellant relies heavily on *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), since suit there was permitted though brought five and one-half years after the "mini ship-to-shore gun battle" that case involved. We point out to appellant that the suit there was against private persons, not the United States. Hence 46 U.S.C. § 745 was not involved in *Kelly* at all, and *Kelly* cannot free appellant from the two years' statute of limitations in any suit against the United States or its employees here.

the United States[4] so that the same statute of limitations, 46 U.S.C. § 745, governs and bars appellant's suit. *H-10 Water Taxi Co. v. United States,* 379 F.2d 963 (9th Cir. 1967).

■ If, however, this case were somehow not within the admiralty jurisdiction, but rather governed by the Federal Tort Claims Act as a suit against a United States employee (the Secretary of defense), there then would be, as the district court held, concomitant requirements that appellant seek administrative relief within two years, 28 U.S.C. § 2401(b), and exhaust his administrative remedies, 28 U.S.C. § 2675, with which appellant has not complied[5] so that his suit is barred. *See Altman v. Connelly,* 456 F.2d 1114 (2d Cir. 1972); *Childers v. United States,* 442 F.2d 1299 (5th Cir.), *cert. denied,* 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 99 (1971); *Portis v. United States,* 483 F.2d 670 (4th Cir. 1973).

■■ Appellant's claim of unconstitutionality of these statutes of limitation as in violation of several Amendments is without merit. The United States' sovereign immunity has always been upheld. *Carr v. United States,* 98 U.S. 433, 437–39, 25 L.Ed. 209 (1879). *See* Holmes, *J.,*

in *Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (1907); Marshall, *J.,* in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 410, 5 L.Ed. 257 (1821); Jay, *J.,* in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 478, 1 L.Ed. 440 (1793). Suits can be maintained against the United States only by its permission and in the manner prescribed by Congress and subject to restrictions it imposes. *Munro v. United States,* 303 U.S. 36, 41, 58 S.Ct. 421, 82 L.Ed. 633 (1938). The Admiralty Acts in question waive that immunity only on the limited basis that action be commenced within a two-year period after the alleged injury has occurred and that the statutes be otherwise complied with; this is a jurisdictional limitation not subject to waiver. *Gardner v. United States,* 446 F.2d 1195, 1197 (2d Cir. 1971), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972); *Isthmian Steamship Co. v. United States,* 302 F.2d 69 (2d Cir. 1962). The Federal Tort Claims Act likewise requires the prior seeking of administrative relief. *Morano v. United States Naval Hospital,* 437 F.2d 1009 (3d Cir. 1971).

Accordingly, the judgment must be and it hereby is affirmed.

---

4. The Act was adopted to provide a suit in personam in lieu of a previous unlimited right to bring a libel in rem against United States vessels in United States ports. *Nahmeh v. United States,* 267 U.S. 122, 45 S.Ct. 277, 69 L.Ed. 536 (1925). It clearly did not apply to a tort occurring on land. *Lindgren v. United States Shipping Board Merchant Fleet Corp.,* 55 F.2d 117 (4th Cir. 1932) (injury on ship in dry dock). It had been said that neither the Suits in Admiralty Act nor the Public Vessels Act apply absent reference to a specific vessel of the United States. *Balboa Shipping Co. v. Standard Fruit & Steamship,* 85 F.Supp. 312 (S.D.N.Y.1949), *appeal dismissed,* 181 F.2d 109 (2d Cir. 1950). But this was prior to the addition in 1970 to § 742 of the words "or if a private person or property were involved," Pub.L. No. 86–770, 74 Stat. 912 § 3 (Sept. 13,

1960), thereby bringing all maritime claims against the United States into the admiralty jurisdiction of the district court. *Ira S. Bushey & Sons, Inc. v. United States,* 398 F.2d 167 (2d Cir. 1968) (United States ship in drydock); *T. J. Falgout Boats, Inc. v. United States,* 361 F.Supp. 838, 841–42 (C.D.Cal.1972), *aff'd,* 508 F.2d 855 (9th Cir. 1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975).

5. Appellant's complaint alleges substantially and his reply brief concedes that he "sent by registered mail to the Former United States Attorney General, Elliot Richardson on September 29, 1973, this but *eleven days after* said statute of limitations informing the Attorney General of this shell fire attack—the Attorney General received this letter October 3, 1973." (Emphasis added.)